UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

JEREMIAH WILSON, EDUBERTO QUINONES,

**'08 CIV 5678**

Plaintiff,

-against-

THE CITY OF NEW YORK, DEPARTMENT OF CORRECTION COMMISSIONER MARTIN F. HORN, MICHELLE MACK, WARDEN OF NORTHERN INFIRMARY COMMAND, CAPTAIN "JANE" ROBERTS, CAPTAIN "JANE" HALEK, #1485, CORRECTIONS OFFICERS "JOHN" HOLWELL, CORRECTION OFFICER "JOHN" ALFONSO, CORRECTION OFFICER "JOHN" BARBER, #14124, CORRECTION OFFICERS JOHN DOE #1-2,

Defendants.
-------------------------------------------------------------- x

**COMPLAINT AND JURY DEMAND**

Docket #

ECF CASE

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seeks relief for the violation of their rights secured by 42 USC §§1983, 1988 and the Fourth and Fourteenth Amendments and the laws and Constitution of the State of New York.

2. The claim arises from an April 11, 2007 incident in which Officers of the New York City Department of Correction ("DOC") acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, excessive force, assault, and battery.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC §1331 and 42 USC §1983. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## PARTIES

7. Plaintiff Jeremiah Wilson is a citizen of the United States and at all times here relevant resided in Bronx County, City and State of New York. He was a pre-trial detainee at the time of the incident in the custody of the Department of Correction. Mr. Wilson was housed in the Northern Infirmary Command Annex, a medical housing unit on Riker's Island.

8. Plaintiff Eduberto Quinones, a.k.a. Jose Rodriguez, is a citizen of the United States and at all times here relevant resided in the County of Bronx, City and State of New York. He was a pre-trial detainee at the time of the incident in the custody of the Department of Correction. Mr. Quinones was housed in the Northern Infirmary Command Annex, a medical housing unit on Riker's Island.

9. The City of New York is a municipal corporation organized under the laws of the State of New York.

10. New York Department of Correction Commissioner Martin Horn ("Horn") was at all times here relevant the Commissioner of the New York City D.O.C., and, as such, was a policy maker with respect to training, supervision, and discipline of D.O.C. officers, including the other individual defendants. On information and belief, Commissioner Horn was responsible for the

2

policy, practice, supervision, implementation, and conduct of all D.O.C. matters and was responsible for the appointment, training, supervision, and conduct of all D.O.C. personnel, including the defendants referenced herein. Commissioner Horn is also responsible for the care, custody, and control of all inmates housed in the D.O.C. jails. As Commissioner, Horn is provided with reports of applications of force, allegations of unreported use of force, and other breaches of security in the Department jails. In addition, at all relevant times, defendant Horn was responsible for enforcing the rules of D.O.C., and for ensuring that D.O.C. personnel obey the laws of the United States and of the State of New York. Defendant Horn is sued in his individual and official capacity.

11. At all times relevant hereto, Michelle Mack was the Warden of Northern Infirmary Command ("N.I.C."). As Warden, her responsibilities included supervision of correction officers, captains, and other supervisors with respect to the care, custody and control of prisoners confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of D.O.C. jails, including D.O.C. directives and orders governing the use of force, the reporting of use of force, and the Board of Correction Minimum Standards. As Warden, Mack is provided with all reports of use of force, allegations of use of force, and other violent incidents NIC. Warden Mack is sued in her individual and official capacities.

12. Captain "Jane" Roberts was, at all times here relevant, an employee of the D.O.C., and is sued in her individual and official capacities.

13. Captain "Jane" Halek was, at all times here relevant, an employee of the D.O.C., and is sued in her individual and official capacities.

14. Correction Officer Alfonso was, at all times here relevant, an employee of the D.O.C.,

and is sued in his individual capacities.

15. Correction Officer Holwell was, at all times here relevant, an employee of the D.O.C., and is sued in his individual capacities.

16. All other individual defendants ("the officers") are employees of the D.O.C., and are sued in their individual capacities.

17. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

18. Within 90 days of the events giving rise to this claim, plaintiffs filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

19. On April 11, 2007, plaintiffs were incarcerated in the Northern Infirmary Command Annex, Dormitory 2B, of Riker's Island in Department of Correction custody.

20. At approximately 3:30 p.m., three correction officers, Officer "John" Holwell, Officer "John" Alfonso and Officer "John Doe" entered Dormitory 2B to extract another inmate.

21. The inmate refused to leave with the officers.

22. Officers Holwell, Alfonso and "Doe" then began using force against that inmate, until he was restrained on the ground.

23. After the officers had the inmate cuffed on the ground, and continued to use force against him, plaintiffs, along with other inmates, began to object to the continued beating.

24. Captain "Jane" Halek and Captain "Jane" Roberts then entered Dormitory 2B as the

4

other inmate continued to be beaten.

25. Plaintiff Quinones says to Captain Roberts, in sum and substance, "Look at what they are doing!" and Captain Roberts then threw a closed fist punch in Mr. Quinones' face.

26. Officers Holwell and "John Doe" go to Quinones, punch him and take him into the hallway through gates A and B, where they continued to beat him, within the line of vision of the Mr. Wilson and the other inmates.

27. Then approximately ten to fifteen "John Doe" officers entered Dormitory B.

28. Plaintiff Wilson was punched in the back by "John Doe" officer, followed by two more "John Doe" officers. Wilson was dragged into the hallway, continued to be beaten, in disregard to his medical condition.

29. Wilson was also kicked in his right side after he was handcuffed.

30. All plaintiffs requested medical attention but were told to wait in intake.

31. Eventually they returned to their dorm without medical attention a few hours later.

32. For several days after the incident, plaintiffs requested medical attention for the injuries but were told by medical staff that they could not record injuries unless they had injury reports from DOC.

33. On April 18, 2007, plaintiff Wilson was removed to the "bing".

34. At all times during the events described above, the Corrections Officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

35. During all of the events described above, defendants acted maliciously and with intent

5.

to injure plaintiffs.

## DAMAGES

36. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

   a. Violation of their right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

   b. Violation of their right not to be searched or seized unreasonably under the Fourth Amendment to the United States Constitution;

   c. Violation of their New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

   d. Violation of their New York State Constitutional right under Article 1, Section 12 to not be unreasonably searched or seized;

   e. Physical pain and suffering;

   f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
(42 USC § 1983)

37. The above paragraphs are here incorporated by reference.

38. Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and are liable to plaintiffs under 42 U.S.C. §§1983 and §§ 6 and 12 of the New York State Constitution.

39. Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
### (MUNICIPAL AND SUPERVISORY LIABILITY)

40. The above paragraphs are here incorporated by reference.

41. The City, the Commissioner, and Warden Mack are liable for the damages suffered by plaintiffs as a result of the conduct of their employees, agents, and servants.

42. The City, the Commissioner, and Warden Mack knew or should have known of their employees', agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

43. The aforesaid event was not an isolated incident. The City, the Commissioner, and Warden Mack have been aware for some time (from lawsuits, notices of claim, inmate complaints, internal investigations) that many of their officers are insufficiently trained on how to avoid excessive use of force. The City, the Commissioner, and Warden Mack insufficiently discipline officers for not reporting fellow officers' misconduct that they have observed, and they fail to discipline officers for making false statements to disciplinary agencies. The investigatory body responsible for monitoring officer behavior, the Inspector General's office, also wrongfully allows officers to write their own reports, rather than interviewing officers individually, although that is standard procedure for reviewing inmate statements. In addition, the Inspector General routinely fails to investigate claims of violence or abuse when the person suffering does not initiate the claim. The City, the Commissioner, and Warden Mack are aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the defendants have failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil and constitutional rights, without fear of reprisal.

44. The City, the Commissioner, and Warden Mack knew or should have known that the

7

officers who caused plaintiffs' injury had a propensity for the type of conduct that took place in this case. Nevertheless, the City, the Commissioner, and Warden Mack failed to take corrective action. Without proper supervision not only is this abusive behavior ignored, it is condoned.

45. The City, the Commissioner, and Warden Mack have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases involving misconduct.

46. The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City, the Commissioner, and Warden Mack to the constitutional rights of persons within New York City, and were the cause of the violations of plaintiffs' rights here alleged.

47. The City, the Commissioner, and Warden Mack have damaged plaintiffs by their failure to properly train, supervise, discipline, review, remove, or correct the illegal and improper acts of their employees, agents or servants in this and in similar cases involving officer misconduct.

48. Plaintiffs have been damaged as a result of the wrongful, negligent and illegal acts of the City, the Commissioner, and Warden Mack.

### THIRD CAUSE OF ACTION
### (ASSAULT TO EDUBERTO QUINONES)

49. The above paragraphs are here incorporated by reference.

50. By swinging at plaintiff Quinones, defendants Roberts, Holwell and "John Doe" made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

51. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and is liable to plaintiff under common law, 42

USC §1983 and New York State laws and Constitution.

52. Plaintiff was damaged by defendants' assault.

### FOURTH CAUSE OF ACTION
(ASSAULT TO JEREMIAH WILSON)

53. The above paragraphs are here incorporated by reference.

54. By hitting and kicking at plaintiff Wilson, defendants "John Doe" officers made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

55. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, 42 USC §1983 and New York State laws and Constitution.

56. Plaintiff was damaged by defendants' assault.

### FIFTH CAUSE OF ACTION
(BATTERY – to EDUBERTO QUINONES)

57. The above paragraphs are here incorporated by reference.

58. Defendants Roberts, Holwell and "John Doe" engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

59. Defendants used excessive and unnecessary force with plaintiff.

60. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, 42 USC §1983 and the New York State Constitution.

61. Plaintiff was damaged by defendant's battery.

### SIXTH CAUSE OF ACTION
(BATTERY – to JEREMIAH WILSON)

62. The above paragraphs are here incorporated by reference.

63. Defendants "John Doe" engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

64. Defendants used excessive and unnecessary force with plaintiff.

65. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, 42 USC §1983 and the New York State Constitution.

66. Plaintiff was damaged by defendant's battery.

## SEVENTH CAUSE OF ACTION
### (CONSTITUTIONAL TORT)

67. All preceding paragraphs are here incorporated by reference.

68. Defendants, acting under color of law, violated plaintiffs' rights pursuant to §§6 and 12 of the New York State Constitution.

69. A damages remedy here is necessary to effectuate the purposes of §§6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

## EIGHTH CAUSE OF ACTION
### (NEGLIGENT HIRING & RETENTION)

70. The above paragraphs are here incorporated by reference.

71. Defendant captains and officers had a bad disposition and the D.O.C. knew or should have known of facts that would have led reasonable and prudent people to further investigate the defendant officers' bad dispositions through the hiring, retention and promotion process.

72. Defendants knew or should have known that their failure to investigate defendant officers' bad dispositions would lead to plaintiffs' injuries.

73. Defendants were negligent in their hiring and retaining the officers involved in this case

10

in that they knew or should have known of the officers' propensity to use excessive force.

74. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under common law, 42 USC §1983 and the New York State Constitution.

75. The injury to plaintiffs was caused by the officers' foreseeable use of excessive force.

## NINTH CAUSE OF ACTION
### (RESPONDEAT SUPERIOR)

76. The above paragraphs are here incorporated by reference.

77. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

78. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, plaintiffs was damaged.

## TENTH CAUSE OF ACTION
### (CONSPIRACY)

79. The above paragraphs are here incorporated by reference.

80. Defendant Captains Halek and Roberts made an agreement to attempt to cover up the assault, battery and excessive force against plaintiffs.

81. Defendant Correction Officer Halek and Roberts took action in furtherance of this agreement which included, but is not limited to, transferring plaintiff Wilson to the "bing" on April 18, 2007 and depriving him of access to legal counsel.

82. Plaintiff was injured as a result of defendants' conspiracy.

11

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: Brooklyn, New York
June 18, 2008

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Department of Correction Commissioner
Martin Horn
60 Hudson Street
New York, NY 10013

Michelle Mack
Warden, Northern Infirmary Command
60 Hudson Street
New York, NY 10013

Captain "Jane" Roberts
15-00 Hazen St.
East Elmhurst NY 11370

Captain "Jane" Halek, #1485
15-00 Hazen St.
East Elmhurst NY 11370

Yours, etc.,

By: Cynthia Conti-Cook
Bar #CC0778
Stoll, Glickman & Bellina, LLP
Attorney for Plaintiff
71 Nevins Street
Brooklyn, NY 11217
(718) 852-3710
cynthiaconticook@gmail.com

Corrections Officers "John" Holwell
15-00 Hazen St.
East Elmhurst NY 11370

Correction Officer "John" Alfonso
15-00 Hazen St.
East Elmhurst NY 11370

Correction Officer "John" Barber, #14124
15-00 Hazen St.
East Elmhurst NY 11370